# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11, No. 22-30140-EDK |
|  | ) |  |
| SUMMER AVE LLC | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |

## CHAPTER 11 PLAN OF REORGANIZATION
## FOR SMALL BUSINESS DEBTOR UNDER SUBCHAPTER V[1]

*COUNSEL FOR THE DEBTOR:*

Louis S. Robin, Esq.
Law Offices of Louis S. Robin
1200 Converse Street
Longmeadow, MA  01106
Tel. (413) 567-3131
Fax (413) 565-3131
louis.robin@prodigy.net

Dated: July 27, 2022

---

[1] Pursuant to Bankruptcy Rule 3016(d), this Plan conforms with Official Form 425A (Plan of Reorganization for Small Business Under Chapter 11) and includes all Articles.

## INTRODUCTION

Summer Ave LLC, the debtor and debtor-in-possession (the "Debtor") hereby proposes the following plan of reorganization.

Pursuant to § 1190 of the Code, this Plan is being sent to all holders of Claims against the Debtor so that the Debtor may solicit votes for the Plan and creditors may be provided with information concerning the Plan, the Debtor, and the prospect of future operations. All references herein to the Plan are as it may be amended from time to time.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Please refer to the Scheduling Order to be issued by the Bankruptcy Court containing important information regarding Plan voting and objection deadlines.**

**The Debtor has provided definitions of certain terms in Article 9, Section 9.1, on pages 18 through 22. You may wish to read these first prior to reading the following provisions.**

## ARTICLE I:  DISCLOSURES

1.1 **Brief History of the Business Operations and Events Leadings to Bankruptcy Filing.** The Debtor is a Massachusetts limited liability company that was initially founded on August 31, 2011, by Louis Masaschi. Since its founding, Louis Masaschi has owned all of the equity interest in the Debtor. Louis Masaschi initially served as its Manager through 2012, and then Jeannette Norman served as the Manager through 2021 (Jeannette Norman is Louis Masaschi's spouse). Louis Masaschi became the Manager again in 2022.

The Debtor purchased 752-760 Sumner Avenue, Springfield, Massachusetts on September 23, 2011, for $765,000.00 by deed filed in the Hampden County Registry of Deeds, Book 18926 Page 178. 752-760. Summer Avenue consists of five (5) parcels: three buildings and two parking lots, each on a separate parcel, with building addresses of (i) 431-435 White Street, (ii) 429 White Street and 752 Sumner Avenue, and (iii) 760 Sumner Avenue, Springfield, Massachusetts. These properties are the only real property owned by the Debtor, and will be hereinafter referred to as "Sumner Ave". These properties have a total of 7 commercial units and 6 residential units, with the possibility of adding two more units, as office space, a retail unit, and/or a residential unit.

In March 2018, the mortgage on Sumner Ave was refinanced with Silver Hill Funding LLC, for a principal amount of $1,050,000This mortgage was assigned to Community Loan Servicing, LLC (hereinafter referred to as the "Community Mortgage"). Although there were some arrears in the payment of this mortgage, the Covid-19 pandemic caused problems with the Debtor's rental tenants, and from early 2020 the Debtor did not have sufficient funds to pay the Community Loan Mortgage. However, in the months leading up to the Chapter 11 filing, the Debtor was able to replace tenants, and once again has been able to collect current rents from its remaining tenants. Similarly, the Debtor was able to rent a unit previously used by a restaurant, for a new restaurant tenant, that would realize $2,000.00 per month of rent, although the tenancy did not commence until June, 2022.

The Debtor currently has no employees.  Louis Masaschi, as the Debtor's Manager, manages and provides for maintenance of the building.

Presently, there are a total of fifteen (15) units, nine (9) of which are commercial units (of which seven (7) are occupied), and six (6) are residential units (of which all are occupied)..

Due to non-payment of the Community Mortgage, a foreclosure sale was scheduled for April 28, 2022.  The Debtor's Chapter 11 case was commenced to stay the foreclosure sale on April 28, 2022.  On May 2, 2022, the United States Trustee appointed David A. Mawhinney to serve as the trustee in this case pursuant to section 1183 of the Bankruptcy Code (the "Subchapter V Trustee").

1.2     **The Debtor's Assets and Liabilities**.

A. *Assets*

The Debtor's principal asset is Sumner Ave, which is listed in his Schedule A/B filed with the Bankruptcy Court with a value of $775,000 (Docket No. 1, page 14).  The Debtor also listed in his Schedule A/B a bank account with $3,000, and miscellaneous lobby furniture of $100 in value (Docket No. 1, pages 12 and 13, respectively).  The Debtor did not list any back rents owed in his schedules, but upon further reflection these may total over $10,000; the Debtor did not keep up to date records of these amount due to the nature of the pandemic, so it does not have an accurate amount; further, the Debtor, again due to the nature of the pandemic, believes these various parties have various defenses to nonpayment.  Finally, the collectability of any judgments should be questioned because the Debtor believes that these various parties have minimal funds – business have suffered and residential tenants are notoriously impoverished, particularly for apartment rentals. In fact, the Debtor believes that he is fortunate to have tenants at this time who are relatively up to date post-petition.  The end result is that the Debtor has concluded that any back rent, owed by current or former tenants has little practical value, if any – the cost of commencing litigation, procuring judgments, and the unlikely ability to collect on any judgments, lead the Debtor to conclude that these have no value; in any event, the Debtor will amend his schedules to include these assets, although note the inability to collect upon these receivables.

B. *Prepetition Liabilities*

Pursuant to the Notice of Chapter 11 Bankruptcy Case dated May 5, 2022 (Docket No. 10), the general bar date for creditors to file their claims was July 7, 2022 (the "Claims Bar Date").  The Government Bar Date is October 25, 2022, pursuant to § 502(b)(9) of the Code.  Attached as **Exhibit B** is a list of prepetition unsecured claims and creditors.

i.     Community Loan Servicing, LLC

The Debtor has a first mortgage obligation (again, the Community Mortgage) owed to Community Loan Servicing, LLC.  Community Loan Servicing has filed a proof of claim (Claim Docket No. 3) in the amount of $1,650,566.78, asserting that it is secured, but not listing any value to the property/collateral.

3

ii.    Belvidere Capital, LLC

Belvidere Capital, LLC, is the holder of a junior mortgage filed in the Hampden County Registry of Deeds on June 14, 2019, in the Hampden County Registry of Deeds in Book 22708 Page 518. No proof of claim was filed, but it remains as a secured claim on file with the Hampden County Registry of Deeds. The Debtor believes that this mortgage is avoidable because the Debtor did not receive any consideration for this mortgage – the underlying debt for this mortgage is the result of funds advanced to an affiliate of the Debtor (more specifically, a company in which the Debtor's equity holder/beneficiary is also the equity holder/beneficiary) accordingly, the Debtor believes that it is subject to avoidance as a fraudulent transfer. If necessary, the Debtor is prepared to file a complaint voiding this lien/mortgage.

iii.  City of Springfield

The City of Springfield was listed with a priority claim in the amount of $600.00 as undisputed, liquidated, and noncontingent. However, a lien is filed in the Hampden County Registry of Deeds in Book 23591 Page 531 asserting an amount of $610.00 as owed.

There is also a claim of the Water and Sewer Department for the City of Springfield. Although they have yet to file a proof of claim, the Debtor understands that they will file a proof of claim in the amount of approximately $4,500.00. As this is a secured claim, it will still be in effect whether a proof of claim is filed or not.

iv    Administrative Expense Claims (Non-Tax)

After the Petition Date, the Debtor has generally paid its obligations as they become due and does not believe that there will be any substantial unpaid administrative claims on account of post-petition trade debt. The Debtor estimates that the Administrative Expense Claims, excluding Professional Fee Claims and Tax Claims, will be nominal, and will be paid in the ordinary course of events after confirmation of this Plan. The Debtor estimates that Professional Fee Claims, subject to Bankruptcy Court approval, will be approximately $22,500, including (i) $15,000.00 for fees and expenses related to Debtor's bankruptcy counsel, and (ii) $7,500.00 for fees and expenses related to the Subchapter V Trustee.

v.    Priority Claims/Tax Claims

As mentioned above, the deadline for governmental authorities to file proofs of claims is October 25, 2022. The Debtor does not expect any substantial unpaid prepetition or post-petition tax-related Claims. So far, neither the Internal Revenue Service nor the Massachusetts Department of Revenue have filed a proof of claim as of this date.

vi.   General Unsecured Claims

The total for filed and scheduled General Unsecured Claims against the Debtor is $30,571.01 as listed in **Exhibit B**. This total does not include any deficiency claims of Community Loan Servicing, LLC and Belvidere Capital, LLC.

C. _Liquidation Analysis_.

To confirm the Plan, the Court must find that, with respect to each impaired class that does not accept the Plan, the creditors in such impaired class will receive at least as much under the Plan as such Claim holder would receive if the debtor liquidated under Chapter 7. 11 U.S.C. §§ 1129(a)(7) and 1190(1)(B).

Attached hereto as **Exhibit A** and incorporated herein by reference is a liquidation analysis (the "Liquidation Analysis") prepared by the Debtor with the assistance of its Manager Louis Masaschi. As reflected in the Liquidation Analysis, the Debtor believes that liquidation of the Debtor's business under Chapter 7 of the Bankruptcy Code would result in substantial diminution in the value to be realized by creditors as compared to distributions contemplated under the Plan. If the case were converted, the administrative costs would increase significantly as a Chapter 7 trustee would need to hire new professionals to analyze and liquidate the Debtor's limited assets. In addition, the Debtor believes it would be more difficult to collect rents/accounts receivable, and it would be likely that there would be no recovery for unsecured creditors as any funds realized would go to Community Loan Servicing, LLC. Consequently, the Debtor and its management believe that confirmation of the Plan will provide a substantially greater return to creditors than would a liquidation under chapter 7 of the Bankruptcy Code.

D. _Projections and Feasibility_.

Attached hereto as **Exhibit C** is a financial projection for the next five years with respect to the ability of the Debtor to make payments under the proposed Plan (the "Financial Projections"). 11 U.S.C. § 1190(1)(C). In preparing these projections, the Debtor, primarily its Manager and attorney, has analyzed its ability to meet its obligations under the Plan. Based on the Financial Projections, the Debtor believes that it will be a viable operation following the bankruptcy case and that the Plan will meet the feasibility requirements of the Bankruptcy Code. Based upon the Financial Projections, confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

Further, if a class of claims or interests is impaired by the plan and does not accept the plan, section 1191(b) of the Bankruptcy Code requires the Bankruptcy Court to additionally find that the plan is fair and equitable, with respect such class of claims or interests as a condition to plan confirmation. To conclude that the plan is fair and equitable to each nonconsenting impaired class, the Bankruptcy Court must find that: (1) with respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of the Bankruptcy Code; (2) as of the effective date of the plan, all of the projected disposable income of the debtor to be received during the plan term, or its equivalent value, will be applied to make payments under the plan; and (3)(i) the debtor will be able to make all payments under the plan, or (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan. 11 U.S.C. § 1191(c).

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE II: CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to § 1122 and § 1123(a)(1), the Plan provides for the following classes of claims:

| Class | Status | Entitled to Vote? |
|-------|--------|-------------------|
| **Class 1** – City of Springfield | Unimpaired | No |
| **Class 2 –** Water and Sewer, City of Springfield | Unimpaired | No |
| **Class 3** – Community Loan Servicing, LLC | Impaired | Yes |
| **Class 4** – Belvidere Capital, LLC | Impaired | Yes |
| **Class 5** – Other Priority Claims | Unimpaired | No |
| **Class 6** – Convenience Claims | Impaired | Yes |
| **Class 7** – General Unsecured Claims | Impaired | Yes |
| **Class 8** – Equity Interests | Unimpaired | No |

## ARTICLE III: TREATMENT OF UNCLASSIFIED CLAIMS

3.1    **Unclassified Claims.**  Administrative Expense Claims and Priority Tax Claims against the Debtor are not classified for the purpose of voting on, or receiving distributions under, the Plan. Such non-classified Claims shall be treated as follows pursuant to § 1129(a)(9)(A) and (C) and § 1191(e) of the Bankruptcy Code.

3.2    **Administrative Expense Claims.**  In full and complete satisfaction, settlement, release and discharge of any non-tax Administrative Claim, the holder of such a claim shall receive an amount of cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, as soon as reasonably practicable after the Effective Date; (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such claim; (4) at such time and upon such terms as may be agreed upon by such Creditor and the Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

3.3    **Professional Fee Claims.**  Within thirty (30) days after the Effective Date, each Professional shall file an application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date, if not filed already.  Any

objection to such filed request or fee application may be filed by the objection deadline to be provided by the Court.

To the extent not previously paid during the Debtor's bankruptcy case, the Subchapter V Trustee will receive payment in full of his allowed fee application. Debtor's counsel will reach an agreement with the Debtor concerning the payment of his allowed fee application after application of the retainer held by Debtor's counsel (Debtor's counsel had received $7,500.00 prior to the Chapter 11 petition, of which $3,362.00 remain after application of the filing fee of $1,738 for the filing fee and $2,400.00 of prefiling legal service charges.

3.4     **Priority Tax Claims.**  To the extent not previously paid during the Debtor's bankruptcy case, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction of such Claim, an amount of cash equal to the amount of such Allowed Priority Tax Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Tax Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than five (5) years from the Effective Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Tax Claim earlier than five (5) years from the Effective Date through one or more Cash payments.  Until satisfied, an Allowed Priority Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code.

## ARTICLE IV: TREATMENT OF CLASSIFIED CLAIMS

4.1     **Treatment of Claims and Interests.**  Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the holder of such Allowed Claim or Allowed Interest.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

Class 1 – City of Springfield's Claim

a.  *Classification*:  Class 1 consists of any claims owed to the City of Springfield for its claim based upon a lien as filed in the Hampden County Registry of Deeds in Book 23591 Page 531.

b.  This secured claim of the City of Springfield will be paid in full upon confirmation.

c.  *Voting*:  Class 3 is unimpaired under the Plan, and shall not be entitled to vote to accept or reject this Plan.

Class 2 – City of Springfield/Water and Sewer's Claim

*a. Classification*:  Class 2 consists of any claims owed to the City of Springfield/Water and Sewer and will be paid directly by the Debtor in equal monthly installments over a three (3) year period with interest.  This claim is estimated as $4,500.

c.   *Voting*:  Class 3 is unimpaired under the Plan, and shall not be entitled to vote to accept or reject this Plan.

Class 3 – Community Loan Servicing, LLC's Claim

*a.   Classification*:  Class 3 consists of Community Loan Servicing, LLC's Allowed Secured Claim.

b.   The secured claim of Community Loan Servicing, LLC will be a total of $769,890.00, based upon a value of the property of $775,000, less the senior secured claims in Class One and Two. This will be paid directly to Community Loan Servicing, LLC, and paid as follows: interest (6%) only for one year with these monthly payments totaling $3,849.45, and then for ten (10) years with interest (6%) amortized over twenty-five (25) years monthly payments totaling $4,960.41, with a balloon payment of $587,826.71 due after this ten (10) year period.  All payments to Community Loan Servicing, LLC will be paid directly by the Debtor.

d.   *No Default*:  To the extent that any default under the contract(s) with Community Loan Servicing, LLC, exists, upon the Effective Date and the payment of any post-petition arrears, any such default shall be deemed cured.

e.   *Lien Retention:*  Community Loan Servicing, LLC shall retain the Lien securing the Class 3 Claim until payment in full of the Allowed Class 3 Claim.

f.   *Voting*:  Class 3 is impaired under the Plan, and shall not be entitled to vote to accept or reject this Plan.

Class 4 – Belvidere Capital, LLC's Claim

*a.   Classification*:  Class 4 consists of Belvidere, LLC's Allowed Secured Claim.

b.   The claim of Belvidere Capital, LLC shall be considered subordinate to all mortgages and liens, and all other payment obligations to holders of Allowed Claims pursuant to this Plan.  It will be entitled to payment of $100,000 after fifteen (15) years.  At all times relevant before then, Belvidere Capital, LLC will subordinate its claim to any party refinancing any senior liens, as long as the principal amount of such refinancing is no more than $1,000,000.00.  If Sumner Ave is sold, at any time, Belvidere shall be entitled to no more than $100,000.

*c. No Default*:  To the extent that any default under the contract(s) with Belvidere Capital, LLC, exists, upon the Effective Date, any such default shall be deemed cured.

*d. Lien Retention*:  Belvidere Capital LLC shall retain the Lien securing the Class 4 Claim until payment in full of the Allowed Class 4 Claim, but modified as provided above.

*e. Voting*:  Class 4 is impaired under the Plan, and shall not be entitled to vote to accept or reject this Plan.

Class 5 – Other Priority Claims

To the extent that they exist, each holder of a Priority Claim shall receive, in full and final satisfaction of such Claim, an amount of cash equal to the amount of such Allowed Priority Claim, payable in equal installments not less frequently than once each fiscal quarter beginning on the later of (i) the Effective Date, or (ii) the date such Priority Claim becomes due and Allowed or as otherwise Allowed by the Bankruptcy Court and ending not later than five (5) years from the Effective Date; provided, however, that nothing in this section shall prohibit the Debtor from satisfying such Allowed Priority Claim earlier than five (5) years from the Effective Date through one or more Cash payments. Until satisfied, an Allowed Tax Claim shall accrue interest no earlier than the Effective Date and at the non-default rate determined under applicable non-bankruptcy law pursuant to § 511(b) of the Bankruptcy Code

Class 6 – Convenience Class

a.    *Classification*:  Class 5 consists of Allowed Convenience Claims, which are General Unsecured Claims against the Debtor (i) that are Allowed in an amount equal to or less than $25,000 or (ii) in an amount greater than $20,000, but which the holder thereof elects on its ballot to be Allowed in an amount no greater than $20,000 and to be treated as a Convenience Claim.

b.    *Allowance*:  As of the date of this Plan, there are 3 undisputed Convenience Claims, with an aggregate Allowed amount of approximately $30,571.01.

c.    *Treatment*:  Each holder of a Convenience Claim shall receive, in full and final satisfaction of such Claim, within 45 days of the Effective Date, 25% of their unsecured claim.

d.    *Voting*:  Class 5 is impaired under the Plan and holders of Convenience Claims shall be entitled to vote to accept or reject the Plan.

Class 7 – General Unsecured Claims

a.    *Classification*:  Class 6 consists of any General Unsecured Claims against the Debtor.

b.    *Treatment*:  In full and complete satisfaction, settlement, release and discharge of the Class 6 Claims, each holder of the Allowed Class 6 Claim shall receive cash in an amount equal to such Claim's *pro rata* share of $5,000.  The $5,000 shall be funded one (1) year after the Effective Date.

c.      *Voting*:  Class 6 is Impaired under the Plan and holders of General Unsecured Claims shall be entitled to vote to accept or reject the Plan.

<u>Class 8 – Equity Interests</u>

a.      *Classification*:  Class 8 consists of holders of Interests in the Debtor.

b.      *Treatment*:  On the Effective Date, each holder shall retain their Interests in the Debtor in the same proportions that existed on the Petition Date

4.2      **No Admission.**  The description of the Claims and estimation of the recoveries set forth herein should not constitute an admission that the Claims are allowed. The Plan recovery is a projection and the Debtor reserves all of its rights, claims and defenses with respect to any and all Claims.  The ultimate amount due to the various holders of Claims will be determined upon completion of the claim objection process.

4.3      **Confirmation Pursuant to § 1191(b) of the Bankruptcy Code.**  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote.  The Debtor shall seek Confirmation of the Plan pursuant to § 1191(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to § 1191(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**ARTICLE V: ALLOWANCE AND DISALLOWANCE OF CLAIMS; DISTRIBUTION**

5.1      **Disputed Claim**.  A Disputed Claim is a claim that has not been Allowed or disallowed by order of the Bankruptcy Court, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or other party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2      **Late Filed Claims.**  Except as otherwise provided herein or as set forth in any Bankruptcy Court order, all proofs of claim filed after the Claim Bar Date or Governmental Bar Date shall not be Allowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, without the need for any objection by the Debtor, or any further notice to, or action, order or approval of the Bankruptcy Court, unless leave of court is granted to file such claim late.

5.3      **Claim Objection Process.**  The Debtor may object to the allowance of any claims by filing an Objection with the Bankruptcy Court and serving a copy thereof on the holder of the claim, in which event the claim will be treated as a Disputed Claim under the Plan.  Except as otherwise provided by order of the Bankruptcy Court, such objection to a Claim may be filed until the later of: (a) the date that such Claim becomes due and payable in accordance with its terms, or (b) the Claims Objection Deadline.  Any objections to Claims of a governmental unit, shall be served and filed on or before the

Governmental Claims Objection Deadline.  All Claims and Interests that the Debtor has not objected to by the Claims Objection Deadline or Governmental Claims Objection Deadline, as applicable, shall be deemed Allowed.

5.4    **Settlement of Disputed Claims.**  Prior to the Effective Date, the Debtor shall have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with Bankruptcy Rule 9019.  On and after the Effective Date, the Debtor may negotiate and settle any Claims, including Claims for which a Proof of Claim has been filed, without further notice to or approval of the Bankruptcy Court or any other party.

5.5    **Delay of Distribution on a Disputed Claim**.  No distribution will be made on account of a Disputed Claim unless such claim is allowed by final non-appealable order.  If and when a Disputed Claim is finally resolved by allowance of the claim in whole or in part, the Claim will be paid in accordance with the Plan.

5.6    **Post-Petition Interest; Fine and Penalties.**  Allowed Claims shall not include any interest accrued subsequent to the Petition Date unless specifically provided otherwise under the Plan.

## ARTICLE VI:  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    **Assumed Contracts.**  The Debtor expects to assume all leases (and any other contracts). Accordingly, the Confirmation Order will constitute an order of the Bankruptcy Court approving, as of the Effective Date, pursuant to § 365 and § 1123(b)(2) of the Bankruptcy Code, the assumption of all Executory Contracts and Unexpired Leases pending as of the date of the Confirmation Hearing.  Until the conclusion of the Confirmation Hearing, the Debtor shall have the right to request the rejection of any Executory Contract or Unexpired Lease.

6.2    **Cure of Default.**  The Debtor does not believe that it has defaulted on any of the pending leases (and any other contracts).  Regardless, the Debtor shall cure any defaults in any Executory Contract or Lease within 14 days of the Effective Date.  If there is any dispute regarding any Cure, the ability of the Debtor to provide "adequate assurance of future performance" within the meaning of § 365 of the Bankruptcy Code, objection to the proposed assumption of the Executory Contract or Unexpired Lease, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption, or as may be agreed upon by the Debtor and the counterparty to the Executory Contract or Unexpired Lease.  Any party asserting any default must file an objection to assumption by the day prior to the initial date of the Confirmation Hearing.

6.3    **Request/Objection Deadline.**  Any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan, including any objection to the proposed Cure, must be filed with the Bankruptcy Court by the Voting Deadline.  Any such objection, if not resolved, will be heard by the Bankruptcy Court at the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or cure of an Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

6.4    **Rejected Contracts.**  All prepetition Executory Contracts and Unexpired Leases not expressly assumed under § 6.1 above are conclusively rejected as of the Effective Date.  Unless otherwise ordered by the Court, a proof of claim arising from the rejection of an Executory Contract or Unexpired Lease under this section must be filed no later than 14 days after the Confirmation Date.

6.5    **Claims for Rejection Damages.**  Pursuant to § 502(g) of the Bankruptcy Code, counterparties to Executory Contracts or Unexpired Leases that are rejected, if any, shall have the right to assert Claims, if any, on account of the rejection of such contracts and leases.  Unless otherwise provided by a Bankruptcy Court order, any proofs of claim asserting Claims arising from the rejection of Executory Contracts and Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the Effective Date.  Any untimely filed proof of claim on account of rejection damages shall: (i) be Disallowed without the need for any further notice to, or action, order, or approval of, the Bankruptcy Court; (ii) be forever barred, estopped, and enjoined from assertion; (iii) not be enforceable against the Debtor; and (iv) be deemed fully satisfied, released, and discharged notwithstanding anything in a proof of claim to the contrary.  All Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases shall be classified as Class 5 Convenience Claims or Class 6 General Unsecured Claims, as applicable.

## ARTICLE VII: MEANS FOR IMPLEMENTATION OF THE PLAN

7.1    **Plan Implementation**.  This Plan will be funded from cash on hand, working capital, and cash from ongoing business operations.  The Debtor will continue to operate in the ordinary course of business. Pursuant to § 1190(2) of the Code, the Plan provides for the submission of all or such portion of the future earnings of the Debtor as is necessary for the execution of the Plan.

7.2    **Disposable Income; Best Efforts Test.**  Pursuant to the Debtor's Financial Projections attached as **Exhibits C**, the Debtor's projected Disposable Income will be used to make payment distributions under the Plan; after payment of operating expenses, the Debtor will use most, if not all of its disposable funds to pay Community Loan Servicing, LLC.  The Debtor believes that its forecast is a reasonable reflection of its past and anticipated future performance.

7.3    **Plan Distributions.**  All distributions to holders of Allowed Claims under the Plan will be made by the Debtor, as set forth below:

a)    _Disbursing Agent_.  Notwithstanding § 1191(b) and § 1194, the Debtor will act as the Disbursing Agent under the Plan.  The Disbursing Agent shall be empowered to effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and make all distributions contemplated hereby.

b)    _Delivery of Distributions_.  Plan distributions shall be mailed by first class mail, postage prepaid, to the address of such holder as provided in the Schedules or filed Proof of Claim, if any, unless the Debtor has been notified in writing of a change of address. The Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

c)    <u>Uncashed Distributions</u>. Checks issued by the Debtor as distributions pursuant to the Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof and thereafter shall be treated under the Plan as an unclaimed distribution. The holder of the Allowed Claim to whom such check originally was issued shall make any requests for re-issuance of any check to the Debtor.  Any requests for re-issuance of such a voided check shall be made on or before forty-five (45) days after the expiration of the ninety (90) day period following the date of issuance of such check.  After such date, all funds held on account of any such voided check shall, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan or become available cash for distribution in accordance with the Plan, and the holder of any such Claim shall not be entitled to any other or further distribution under the Plan on account of such Claim and shall be deemed to have waived its Claim and any right to a distribution thereon.

7.4    **Fair and Equitable Analysis.**  In the event the impaired classes (Classes 3, 4, 6, and 7) do not vote to accept the Plan, and the requirements of § 1129(a)(8) and (10) of the Bankruptcy Code are not satisfied, the Bankruptcy Court may still confirm the Plan as part of a non-consensual process under § 1191(b) of the Bankruptcy Code as long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to each impaired class of Claims and Interests that has not accepted the Plan.

The Plan does not discriminate unfairly, and is fair and equitable, with respect to Class 6 – Convenience Class and Class 7 – General Unsecured Claims.  Specifically, pursuant to § 1191(c)(2) of the Bankruptcy Code, all of the Debtor's projected disposable income over the course of the Plan will be applied to make payments under the Plan, particularly the secured claim of Community Loan Servicing, LLC.  In reviewing this analysis and **<u>Exhibit C</u>**, please note that the payments to Class 6 creditors will be funded by the Debtor's Manager (and equity holder), Louis Masaschi, personally.  Further, the Debtor expects that it will be able to make all other payments under the Plan, as set forth in the financial projections attached as **<u>Exhibit C</u>**.  To the extent that additional funding is necessary, Louis Masaschi will so fund.

7.5    **Execution of Necessary Documents.** Confirmation of the Plan shall constitute authorization for the Debtor, its agents, representatives, partners, affiliates, and successors or assigns to effectuate the Plan and enter into all documents, instruments and agreements reasonably necessary to effectuate the terms of the Plan.

7.6    **Amendment of Documents.** As of the Effective Date, all pre-Confirmation Date documents and agreements (whether written or oral) between the Debtor and any party shall be deemed to be amended as necessary to effectuate and conform to the terms of the Plan. To the extent that there is any inconsistency between the Plan and any such documents and agreements, the terms of the Plan shall control.

7.7    **Management of the Business.** Except as provided in any agreement approved by the Bankruptcy Court, the Debtor's member, Louis Masaschi, shall own, operate, and manage the business after the Effective Date.

7.8    **Vesting of Property; Free and Clear.** Except as otherwise provided in the Plan, as of the Effective Date, all assets of the bankruptcy estate shall vest in the Debtor, and such property shall be free

and clear of all claims and interests of creditors or any other interested parties pursuant to § 1141(b) and (c) of the Bankruptcy Code.

7.9 **Preservation of Causes of Action**. The Debtor will exclusively retain and may enforce, and the Debtor expressly reserves and preserves for these purposes, in accordance with § 1123(a)(5)(A) of the Bankruptcy Code, any Claims, demands, rights and causes of action that the Debtor or its estate may hold against any Person. No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims by virtue of, or in connection with, the confirmation or consummation of the Plan.

7.10 **Default under the Plan; Appropriate Remedies.**

a. Consensual Plans

If the Plan is confirmed under § 1191(a) of the Bankruptcy Code and the Debtor fails to timely perform its obligations under the Plan with respect to one or more holders Allowed Claims then, notwithstanding the injunction set forth in Article VIII, such holders shall be entitled to pursue any rights and remedies that such holders may have under applicable law, including but not limited to foreclosure of liens, and bringing an action against the Debtor for breaching its obligations under the Plan and seeking monetary and/or injunctive relief; provided that the Debtor shall have ninety (90) days to cure any default with respect to its obligations before any holders of Allowed Claims in such Class may be allow to pursue any rights or remedies that such holders may have under applicable law.

b. Non-Consensual Plans

If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, and the Debtor fails to timely perform its obligations under the Plan with respect to one or more Impaired Classes that has not accepted the Plan, then: (i) the Debtor shall have ninety (90) days to cure any default with respect to such Impaired Classes; (ii) if the Debtor is unable to cure such default, it shall, no later than forty-five (45) days from the expiration of the time allotted in clause (i), file a modified plan supported by a revised projected disposable income analysis, which plan shall propose treatment of the Impaired Classes consistent with § 1191; and (iii) the Debtor shall move for the Bankruptcy Court to approve the Plan, as modified, after notice and a hearing. If the Debtor fails to comply with this paragraph after failing to perform its obligations under the Plan with respect to one of more Impaired Classes or fails to obtain an order approving modifications to the Plan that are sufficient to ensure that holders of Allowed Claims in each Impaired Class are not discriminated against unfairly and receive fair and equitable treatment, then any party in interest may move to convert the Bankruptcy Case to one under chapter 7.

7.11 **Termination of Subchapter V Trustee Service.**

a. Consensual Plans

If the Plan is confirmed pursuant to § 1191(a) of the Bankruptcy Code, the Subchapter V Trustee's service shall terminate and the Subchapter V Trustee shall be discharged once the Plan has been

14

substantially consummated (as defined by § 1101(2) of the Bankruptcy Code), or the bankruptcy case is dismissed or converted to another chapter of the Bankruptcy Code. No later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file and serve a notice of such substantial consummation pursuant to § 1183(c)(2), which shall be sufficient proof of the termination and discharge of the Subchapter V Trustee's services.

### b. <u>Non-Consensual Plans</u>

If the Plan is confirmed pursuant to § 1191(b) of the Bankruptcy Code, the Subchapter V Trustee's service shall terminate upon the entry of a final decree closing the bankruptcy case, or upon the dismissal or conversion of the case to another chapter of the Bankruptcy Code.

### 7.12  **Case Closure.**

### a. <u>Consensual Plans</u>

If the Plan is confirmed pursuant to § 1191(a), upon substantial consummation of the Plan, the Debtor shall file: (i) the notice required under § 1183(c)(2); and (ii) a motion for entry of final decree closing the Bankruptcy Case pursuant to Bankruptcy Rule 3022.

### b. <u>Non-Consensual Plans</u>

If the Plan is confirmed pursuant to § 1191(b), upon completion of all payments due under the Plan to holders of Claims in Classes 3, 4, 6 and 7, the Debtor shall file a motion for entry of final decree closing the bankruptcy case pursuant to Bankruptcy Rule 3022.

## ARTICLE VIII:  DISCHARGE OF CLAIMS AND RELEASE

### 8.1  **Discharge**.

### a. <u>Consensual Plans</u>

If the Debtor's Plan is confirmed under § 1191(a) of the Bankruptcy Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan pursuant to § 1141(d)(1)(A), subject to any other applicable provisions of § 1141 of the Bankruptcy Code.

### b. <u>Non-Consensual Plans</u>

If the Debtor's Plan is confirmed under § 1191(b) of the Bankruptcy Code, the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to § 1141(d)(A) of the Bankruptcy Code and all Administrative Claims upon completion of all payments due during the Plan and the Bankruptcy Court's entry of an order of discharge pursuant to § 1192 of the Bankruptcy Code; *provided* that the order of discharge shall not apply to any debt for which the last payment is due after the Plan has been completed.

8.2  **Injunction Relating to the Plan.** Upon entry of discharge pursuant to § 8.1 of the Plan, all Persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner

or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its assets, on account of, or respecting any Claims, debts, rights, obligations, causes of action or liabilities discharged pursuant to the Plan.

8.3     **Releases.** Upon entry of the order of discharge, in consideration for, among other things, the obligations of the Debtor under the Plan and other contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan: (i) each Holder of a Claim that votes to accept the Plan; and (ii) to the fullest extent permissible under applicable law, each Entity that has held, holds, or may hold a Claim or at any time was a creditor of the Debtor and that does not vote on the Plan or votes to reject the Plan, in each case will be deemed to forever release, waive, and discharge all Claims, obligations, suits, judgments, damages, demands, rights, Causes of Action, and liabilities (other than the right to enforce the Debtor's obligations under the Plan and the contracts, instruments, releases, agreements and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or  unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, or the Plan that such Entity has, had or may have against the Debtor, the Estate, and the Debtor's assets.

8.4     **Exculpation**.  Except as otherwise set forth in the Plan, neither the Debtor, nor any of its respective present or former members, officers, directors, employees, general or limited partners, advisors, attorneys, agents, successors or assigns, including the Subchapter V Trustee, shall have or incur any liability to any holder to a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Chapter 11 bankruptcy proceeding, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the plan occurring prior to the Effective Date. Nothing in this Section of the Plan shall relieve any of the foregoing parties from carrying out their responsibilities, if any, under the Plan and such exculpation shall not apply to any liability for acts or omissions involving gross negligence or willful misconduct.

## ARTICLE IX: GENERAL PROVISIONS

9.1     **Definitions and Rules of Construction**.   The definitions and rules of construction contained in §§ 101 and 102 of the Bankruptcy Code shall apply when the terms defined or construed in the Bankruptcy Code are used in the Plan but not defined. For purposes of the Plan, the following terms shall have the meanings specified herein:

"Administrative Expense Claims" shall mean any cost or expense of administration of the bankruptcy case allowable under § 503(b) or § 507(a)(2) of the Bankruptcy Code, including without limitation, any actual and necessary post-petition expense of preserving the Debtor's estate or operating the business, all Professional Fee Claims, all to the extent not paid previously by the Debtor in the ordinary course or pursuant to Bankruptcy Court order.

"Allowed" shall mean, as to a Claim or Interest, proof of which was timely and properly filed or, if no proof of Claim or Interest was filed, which has been or hereafter is listed in the Schedules, as liquidated in an amount and not disputed or contingent and, in each case, as to which: (a) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (b) an objection has been interposed and such Claim or Interest has been allowed, in whole or in part, by a Final Order and/or by the agreement of the holder of such Claim or Interest.  With respect to an Administrative Claim, "Allowed" shall mean any Administrative Claim, or any portion thereof, with respect to which both (a) a timely and proper request for payment has been made to the extent required by the Plan, the Confirmation Order, or by any other order of the Bankruptcy Court, and (b) such Administrative Claim is allowed by the Bankruptcy Court. Allowed Claims shall not include Disputed Claims or Disallowed Claims.

"Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. §§101 et seq., as amended from time to time.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Massachusetts.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Claim" shall mean a claim as defined in § 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the later of (i) forty-five (45) days after the Effective Date, or (ii) such greater period of limitation for the filing of an objection to any Claim as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the Claim holder.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this bankruptcy case; provided, however, if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

"Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court on confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and §§ 1128 and 1191 of the Bankruptcy Code, as such hearing may be continued from time to time.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Cure" shall mean a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's default under an Executory Contract or an Unexpired Lease assumed by the Debtor under § 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to § 365(b)(2) of the Bankruptcy Code.

"Debtor" shall have the meaning set forth in the preamble to the Plan, and shall include the confirmed Debtor after the Effective Date of the Plan, as applicable.

"Disallowed Claim" shall mean (a) any Claim that has been disallowed or expunged by a final order; (b) any Claim that has been listed by the Debtor in the Schedules in the amount of "$0" or as unliquidated in amount, disputed, contingent, or unknown and for which a bar date has been established but no proof of claim has been timely filed; or (c) unless otherwise specified herein or by order of the Bankruptcy Court, any interest, fees and other charges, fines, penalties, multiple or punitive damages.

"Disposable Income" shall have the meaning set forth in § 1191(d) of the Bankruptcy Code.

"Disputed Claim" shall have the meaning set forth in Section 5.1 of the Plan.

"Effective Date" shall mean the date that is the first business day: (i) following the date that is fourteen (14) days after the Confirmation Date; or (ii) if a stay of the Confirmation Order is in effect, the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

"Executory Contract" shall mean a contract to which the Debtor is a party and that is subject to assumption or rejection under § 365 of the Bankruptcy Code

"Final Order" shall mean a final and non-appealable order of the Bankruptcy Court.

"General Unsecured Claim" shall mean a Claim against the Debtor that is not an Administrative Expense Claim, a Professional Fee Claim, a Priority Claim, or a Claim under Classes 1-5 or Class 7.

"Government Bar Date" shall mean October 25, 2022, which is 180 days after the Petition Date.

"Governmental Claim Objection Deadline" shall mean November 24, 2022 or by such later date as may be fixed or established by the Bankruptcy Court or by agreement between the Debtor and the governmental entity.

"Impaired" shall mean with respect to any Class of Claims or Interests, a Claim or Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

"Interest" or "Equity Interest" means any equity or membership interest in the Debtor whether in the form of common or preferred stock, stock options, warrants, partnership interests, membership interests, any other right to purchase or otherwise receive any ownership interest in the Debtor, or other interest or related right to payment or compensation based upon such interest, existing on or before the Effective Date.

"Lien" shall have the meaning set forth in § 101(37) of the Bankruptcy Code and shall include all writs of attachment, and lis pendens; except that (a) a lien that has been avoided in accordance with §§ 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien, and (b) no lien shall be valid unless approved by a final order or by agreement of the Debtor.

"Other Priority Claims" shall mean any Claim entitled to priority under § 507(a) of the Bankruptcy Code, except Priority Tax Claims, Administrative Expense Claims, and Professional Fee Claims.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision.

"Plan" shall mean this plan of reorganization, including all exhibits, supplements, appendices, and schedules, in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

"Priority Claims" shall mean any Claim entitled to priority under § 507(a) of the Bankruptcy Code.

"Priority Tax Claims" shall mean any Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

"Professional Fee Claims" shall mean the fees and expenses of professionals (employed or appointed pursuant to §§ 327 and 1183(a) of the Bankruptcy Code), including the Subchapter V Trustee, under §§ 328, 329, 330, 331, 503, 507(a) or 1191(e) of the Bankruptcy Code approved by an Order of the Bankruptcy Court.

"Secured Claim" shall mean any Claim that is secured by a Lien on property to the extent of the value of such property, as determined in accordance with § 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under § 553 of the Bankruptcy Code, to the extent of such setoff.

"Subchapter V Trustee" shall have the meaning set forth in the case background section of the Plan.

"Unexpired Lease" shall mean a lease to which the Debtor is a party and that is subject to assumption or rejection under § 365 of the Bankruptcy Code.

"Voting Deadline" shall mean the deadline, to be indicated in a separate notice or order of the Bankruptcy Court, to submit a ballot accepting or rejecting the Plan.


9.2     **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3     **Binding effect**. The rights and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such Person.

9.4     **Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

19

9.5    **Controlling Effect**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts, without giving effect to the principles of conflicts of law of such jurisdiction.

9.6    **Corporate Governance**.  The Debtor's organizational documents do not provide for issuance of non-voting equity securities or any preferred class of equity securities, as referred to under § 1123(a)(6) of the Bankruptcy Code, to the extent applicable.

9.7    **Retention of Jurisdiction**.  Pursuant to § 105 and § 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order, and the Bankruptcy Case to the fullest extent permitted by law.

9.8    **Plan Confirmation Hearing; Objection Deadline**.  The Bankruptcy Court will schedule a hearing on confirmation of the Plan and to consider whether the Plan satisfies the various requirements of the Bankruptcy Code.  Any objection to the Plan shall be filed by the objection deadline to be indicated in a separate notice or Order of the Bankruptcy Court.

9.9    **Voting on the Plan**.  All creditors with Allowed Claims entitled to vote on the Plan, Class 3 (Community Loan Servicing Claim), Class 4 (Belvidere Claim Claim), Class 6 (Convenience Class Claims) and Class 7 (General Unsecured Claims) may cast their votes for or against the Plan by completing, dating, signing and causing the ballot, form of which is included with this Plan, to be returned to the Debtor's counsel by the Voting Deadline. YOU NEED A BALLOT TO OPT IN TO THE CONVENIENCE CLASS

9.10    **Plan Acceptance/Rejection Standard**. Pursuant to § 1126 of the Bankruptcy Code, an impaired class of Claims shall have accepted the Plan if (a) the holders of at least two-thirds (2/3) in an amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan (in both instances, acceptance or rejection by the credit to be in good faith).  If necessary and applicable for confirmation of the Plan, the Debtor reserves the right to request that the Bankruptcy Court address whether the Plan may be deemed accepted or rejected by any impaired Class that does not vote.[2]

---

[2] Courts have adopted the view that although actual acceptance of a plan by at least one class of impaired claims is necessary for a bankruptcy court's confirmation of a plan under § 1129(a)(10), not every creditor is obligated to vote on a plan. <u>See</u>, 11 U.S.C. § 1126(a) (a creditor "may" accept or reject a plan). <u>See</u>, <u>In re Ruti-Sweetwater, Inc.</u>, 836 F.2d 1263, 1266 (10th Cir. 1988) (holding that creditor's inaction constituted an acceptance of the plan; a plan is not only presumed confirmable, but is confirmable under § 1129(a) or 1129(b) where only one class of impaired claims has accepted the plan and the other elements of §1129(a) or § 1129(b) are met); <u>In re Cypresswood Land Partners, I</u> 409 B.R. 396, 430 (Bankr. S.D. Texas 2009) (adopted the view in <u>In re Ruti-Sweetwater</u> and acknowledged the

9.11    **Elimination of Vacant Classes.**  Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to § 1129(a)(8) of the Bankruptcy Code.

9.13    **Voting Classes, Presumed Acceptance by Non-Voting Classes.**  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.[3]

9.14    **Consensual/Nonconsensual Confirmation**.  Pursuant to § 1191(a) of the Bankruptcy Code, the Bankruptcy Court shall confirm the Plan if all applicable requirements of § 1129(a) are met. Under § 1191(b) of the Bankruptcy Code, if all of the applicable requirements of § 1129(a) are met other than § 1129(a)(8) (each class of claims or interests to accept the plan if impaired) and § 1129(a)(10) (if a plan has impaired class of claims, at least one class of claims to accept the plan), the Bankruptcy Court may still confirm the Plan if the Plan does not discriminate unfairly, and is fair and equitable.

There are four impaired classes under the Plan:  Class 3 (Community Loan Servicing LLC's Claim), Class 4 (Belvidere Capital, LLC's Claim) Class 6 (Convenience Class Claims) and Class 7 (General Unsecured Claims).  In the event holders of Claims in Classes 3, 4, 6 or Class 7 vote to accept the Plan by the requisite majority provided in § 1126(c) of the Bankruptcy Code, § 1129(a)(10) will be satisfied (§ 1129(a)(8) will be satisfied if both such impaired Classes vote to accept the Plan).  If the requirements of both §§ 1129(a)(8) and (a)(10) are met, the Debtor will seek confirmation of the Plan pursuant to § 1191(a) of the Bankruptcy Code.  Otherwise, the Debtor will seek confirmation of the Plan pursuant to § 1191(b) of the Bankruptcy Code.

---

disagreement between courts as to whether a creditor's failure to vote or to object to a plan constitutes acceptance of the plan).  But see, In re M. Long Arabians, 103 B.R. 211, 215-216 (BAP 9th Cir. 1989) (holding that the holder of a claim must affirmatively accept the plan).  Courts in the First Circuit have cited to In re Ruti-Sweetwater but the first Circuit has not addressed this issue.  See, In re Boston Hotel Venture, LLC, 460 B.R.38, 51 (Bankr. D. Mass. 2011), *vacated on other grounds*, 2012 WL 4513869 (BAP 1st Cir. November 14, 2011) (impaired class that did not vote was deemed to have accepted the plan); In re Fili, 257 B.R. 370, 373 (BAP 1st Cir. 2001) (citing to In re Ruti-Sweetwater in the context of res judicata effect, stating that chapter 11 plan's discharge provisions bound non-voting, non-objecting creditor with notice).

[3] Several courts have held that a Subchapter V plan can be consensually confirmed, absent an objection, even if no ballots are cast.  In re Robinson, No. 20-11471, 2021 WL 3713850 (Bankr. D. Ks. Aug. 20, 2021); In re Roundy, No. 21-22878, 2021 WL 5428891 (Bankr. D. Utah Nov. 18, 2021); In re Logistics Giving Resources, LLC, No. 22-220143, 2022 WL 2760126 (Bankr. D. Utah July 14, 2022).

9.15    **Effect of Non-occurrence of Effective Date**.  If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor, or (b) prejudice in any manner the rights of the Debtor, or constitute an admission, acknowledgement, offer or undertaking by the Debtor.

9.16    **Tax Consequences**.  The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters and no opinion of counsel has been sought or obtained by the Debtor with respect thereto.  There can be no assurance that the Internal Revenue Service or any state or local taxing authorities will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.  FOR THE FOREGOING REASONS, CREDITORS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS AS TO THE SPECIFIC TAX CONSEQUENCES (FOREIGN, FEDERAL, STATE AND LOCAL) TO THEM OF THE PLAN. THE DEBTOR IS NOT MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS TO ANY CREDITOR OR EQUITY HOLDER, NOR IS THE DEBTOR RENDERING ANY FORM OF LEGAL OPINION AS TO SUCH TAX CONSEQUENCES.

9.17    **Reservation of Rights**.  The Debtor reserves the right to, among other things, (i) contest the right of the holder of any Claim to vote on the Plan, or designate the vote of the holder of any Claim (ii) contest the right of the holder of any Claim to receive distributions under the Plan, (iii) contest the validity of a creditor's Lien or security interest, (iv) seek to subordinate any Claim for inequitable conduct or otherwise, and (iv) to pre-pay all or any portion of an Allowed Claim.  Except as otherwise provided, no assets shall be deemed abandoned and no defense, set-off, counterclaim or right of recoupment of the Debtor shall be deemed waived, released or compromised.

9.18    **Amendment or Modification of the Plan**.  The Debtor shall be permitted to amend, supplement, or modify the Plan at any time, so long as such amendment, supplement, or modification satisfies the restrictions and requirements in § 1193 of the Bankruptcy Code.


Respectfully submitted,

Summer Ave LLC


/s/ Louis Masaschi

By: Louis Masaschi
Title: Sole Member and Manager

## *EXHIBITS*

Exhibit A:      Liquidation Analysis
Exhibit B:      Prepetition Claims Analysis
Exhibit C:      Financial Projections

Also included: Form Ballot with Class 6 Opt In/Opt Out

# EXHIBIT "A"

# LIQUIDATION ANALYSIS

**LIQUIDATION ANALYSIS**

**A. REAL PROPERTY**

| Address<br>(*Sch. A/B, Part 1*) | Value<br>(*Sch. A/B, Part 1*) | Lien<br>(*Sch. D, Part 1*) | Exemption<br>(*Sch. C*) |
|---|---|---|---|
| **431-435 White Street/429 White Street and 752 Sumner Avenue, 760 Sumner Avenue, Springfield, MA - 3 separate buildings (on three separate parcels at the preceding addresses; there are also two separate parking lots on two separate parcels** | **775,000.00** | **4,055,000.00** | **0.00** |

| | |
|---|---|
| Total Value of Real Property (*Sch. A/B, line 55*): | $ 775,000.00 |
| Total Net Equity for Real Property (*Value Less Liens*): | $ 0.00 |
| Less Total Exemptions for Real Property (*Sch. C*): | $ 0.00 |
| Amount Real Property Available in Chapter 7: | $ 0.00 |

**B. ALL OTHER ASSETS** (*Sch. A/B Part 2, no. 4; Part 3 through Part 7. Itemize.*)

| Asset | Value | Lien<br>(*Sch. D, Part 1*) | Exemption<br>(*Sch. C*) |
|---|---|---|---|
| **Miscellaneous lobby furniture** | **100.00** | **0.00** | **0.00** |
| **Berkshire Bank - Checking Account  (prepetition)** | **3,000.00** | **0.00** | **0.00** |

| | |
|---|---|
| Total Value of All Other Assets: | $ 3,100.00 |
| Total Net Equity for All Other Assets  (*Value Less Liens*): | $ 3,100.00 |
| Less Total Exemptions for All Other Assets: | $ 0.00 |
| Amount of All Other Assets Available in Chapter 7: | $ 3,100.00 |

**D. SUMMARY OF LIQUIDATION ANALYSIS**

| Amount available in Chapter 7* | Amount |
|---|---|
| C. Amount All Other Assets Available in Chapter 7 (*Exhibit 2, B*) | $                        3,100.00* |
| | |
| | |
| | |

TOTAL AVAILABLE IN CHAPTER 7:        $                3,100.00

**\* ADDITIONAL COMMENTS REGARDING LIQUIDATION ANALYSIS: ALTHOUGH THE DEBTOR HAS LISTED "ALL OTHER ASSETS" AS AVAILABLE IN CHAPTER 7, THESE ASSETS, PARTICULARLY THE BANK ACCOUNT FUNDS, ARE LIKELY CONSIDERED AS COLLATERAL TO COMMUNITY LOAN SERVICING LLC, AS THEY ARE PROCEEDS FROM THE REAL PROPERTY/RENTS.  ALTHOUGH IT IS POSSIBLE THAT THERE WILL BE MORE FUNDS IN THE CHAPTER 11 BANK ACCUONT OF THE DEBTOR AT THE TIME OF A CONFIRMATION HEARING, AGAIN, THESE FUNDS ARE LIKELY COLLATERAL FOR COMMUNITY LOAN SERVICING LLC.**

**COMMUNITY LOAN SERVICING LLC HAS ALSO FILED A PROOF OF CLAIM FOR OVER $1,6 MILLION.  IT IS ALSO LIKELY THAT, IN A LIQUIDATION SITUATION, THAT A TRUSTEE WOULD NOT BE ABLE TO OBTAIN A TRUE FAIR MARKET VALUE.**

# **EXHIBIT "B"**

# PREPETITION UNSECURED CLAIMS

| Claimant | Amount | |
|---|---|---|
| NSTAR | $6,352.70 | Proof of Claim Filed |
| Eversource | $6,633.31 | Proof of Claim Filed |
| George Renovations | $17,585 | Proof of Claim Filed |
| | | |
| Total | $30,571.01 | |

# EXHIBIT "C"

# PROJECTIONS

## **Projections: For Year 1 after Confirmation**

Rent:

Casa Bella (441 White Street):    $2,000.00

Mini Mart (441 White Street):    $  750.00

Barbershop (441 White Street):    $  500.00

Antique Ship (446 White Street):    $  500.00

Rose Nails (446 White Street):    $1,250.00

2 vacant store (446 White Street):    $    00.00 ($700.00 - $800 potential)

Cricket Mobil (752 Sumner Ave):    $1,250.00

Flowers Flowers (752 Sumner Ave): $1,200.00

Residential Units: 6 rentals all occupied, at a gross total of $3,050.

**Total Rentals: $10,500.00**


Expenses:

Insurance:    $1,950.00

R.E. Taxes:    $1,850.00

Trash:    $  400.00

Utilities:    $1,600.00

Maintenance:    $  500.00

Misc.    $  200.00

Payment of Legal Fees: $150.00 (legal fees will be deferred if necessary)

Total Expenses, prior to payments to Community Loan Servicing LLC: $6,650.00

Community Loan Servicing LLC plan payment for first year: $3,849.45,

## Projections For Years 2 – 6 after Confirmation

Rent:

Casa Bella (441 White Street):           $2,000.00

Mini Mart (441 White Street):        $  750.00

Barbershop (441 White Street):       $  500.00

Antique Ship (446 White Street):     $  500.00

Rose Nails (446 White Street):           $1,250.00

2 vacant store (446 White Street):     $    00.00 ($700.00 - $800 potential)

Cricket Mobil (752 Sumner Ave):      $1,250.00

Flowers Flowers (752 Sumner Ave): $1,200.00

Residential Units: 6 rentals all occupied, at a gross total of $3,050.

Additions for increases in rent and possible other units: $2,000.00

Total Rentals: ***$12,500.00***

### Expenses:

Insurance:        $1,950.00

R.E. Taxes:       $1,850.00

Trash:          $   400.00

Utilities:         $1,600.00

Maintenance:   $   500.00

Misc.           $   200.00

Expenses for
Unit buildouts: $   500.00

Legal Fees:      $   500.00 (legal fees will be deferred if necessary)

Total Expenses, prior to payments to Community Loan Servicing LLC: $7,500.00

Community Loan Servicing LLC plan payment for years 2 - 6: $4,960.41.